466

**Catherine R. LAZURAN, Plaintiff,**

v.

**Evan J. KEMP, Jr., Chairman, United States Equal Employment Opportunity Commission, Defendant.**

**No. C90–894R.**

United States District Court,
W.D. Washington,
at Seattle.

May 30, 1991.

Catherine R. Lazuran, pro se.

Peter O. Mueller, Office of U.S. Atty., Seattle, Wash., Jill Diane Flack, E.E.O.C., Washington, D.C., for defendant.

## ORDER GRANTING LEAVE TO AMEND COMPLAINT

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on plaintiff's motion for leave to amend her complaint. Having reviewed the matter, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I. FACTUAL BACKGROUND

In November 1984, plaintiff Catherine Lazuran, a caucasian female, applied for a trial attorney position in the Seattle District Office of the Equal Employment Op-portunity Commission ("EEOC"). At the time, Ms. Lazuran held an identical position in the EEOC's Los Angeles District Office. In January 1985, M. Socorro Rodriguez, an Hispanic female, was "detailed"[1] from the compliance unit into a trial attorney position in the Seattle District Office. Ms. Rodriguez is still employed in that position. In February 1985, defendant hired Ross Baker, a black male then working in Seattle as a bankruptcy attorney, for the vacant trial attorney position for which Ms. Lazuran also had applied.

On April 16, 1985, plaintiff filed a formal complaint with the EEOC, alleging that its failure to hire her constituted impermissible sex and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* On May 16, 1990, the EEOC issued a final decision on Ms. Lazuran's complaint and informed her of her right to institute proceedings in this court. On June 25, 1990, plaintiff filed this suit, again alleging sex and race discrimination based on her nonselection for a trial attorney position in the Seattle District Office.

Prior to this motion, plaintiff's Title VII claims were based only on sex and race discrimination. Plaintiff states that she learned for the first time definitively on March 25, 1991, from defendant's second supplemental response to interrogatories, that Ms. Rodriguez had been selected as a trial attorney in the Seattle District Office at approximately the same time that Mr. Baker was hired. Plaintiff now moves to amend her complaint to include a charge that defendant also discriminated against her based on national origin when it placed Ms. Rodriguez in a trial attorney position.[2]

## II. DISCUSSION

The underlying purpose of Federal Rule of Civil Procedure 15 governing pleadings is to guarantee that decisions are made on the substantive merits of the case. Thus, Rule 15(a) provides that leave to amend a

---

1. Detailing is a procedure whereby an EEOC employee is temporarily assigned to a different position either within or outside of the EEOC.

2. Plaintiff also seeks to amend her complaint to restate the jurisdictional bases of the court and to add some citations of statutory provisions at issue. Defendant does not oppose these proposed amendments.

complaint shall be freely given when justice so requires. *See, e.g., United States v. Webb,* 655 F.2d 977, 979 (9th Cir.1981).

■ Leave to amend should be denied only in cases where the moving party is guilty of bad faith or is acting for the purpose of delay, where the opposing party will be unduly prejudiced, where trial will be unduly delayed, or where it would be futile to amend the complaint. *Loehr v. Ventura County Community College District,* 743 F.2d 1310, 1319 (9th Cir.1984). *See also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). All of these factors, however, are not weighed equally. The Ninth Circuit has determined that delay alone is an insufficient reason to deny a party leave to amend her complaint. Rather, such delay must be the result of bad faith or must cause undue prejudice to the opposing party. *Webb,* 655 F.2d at 980.

Defendant opposes the amendment on three grounds. First, it argues that since the EEOC has not yet investigated Ms. Lazuran's claim of national origin discrimination, its inclusion in this civil action is premature. Second, defendant argues that even if the amendment were permissible, plaintiff's delay in seeking to amend her complaint would prejudice defendant because the discovery period is over and trial is only two and a half months away. Finally, defendant argues that the delay is unreasonable since plaintiff knew from depositions she took in January that Ms. Rodriguez had been detailed into a trial attorney position in 1985.

## A. *Futility of Amendment*

■ A court need not grant leave to amend where such an amendment would be futile because it would be subject to a motion to dismiss or a motion for summary judgment. *E.g., Unispec Development v. Harwood K. Smith & Partners,* 124 F.R.D. 211, 214 (D.Ariz.1988). Where there is a claim that the amendment would be futile, the court must look to the merits of the challenge to the amendment. *Id.*

■ Defendant claims that an amendment here would be futile because it would be vulnerable to a motion to dismiss for failure to exhaust administrative remedies. Although plaintiff has now filed an amendment to her initial EEOC discrimination charge to include a claim for national origin discrimination, the EEOC has not had a chance to conduct a formal investigation based on that amendment. *See* Declaration of Catherine Lazuran, Exhibit 8.

■ The scope of a Title VII civil complaint is limited to the scope of the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir.1970). The standard for deciding whether a plaintiff has exhausted her administrative remedies is whether the theory actually pursued in court was "like or reasonably related to the allegations of the EEOC charge." *Gibbs v. Pierce County Law Enforcement Support Agency,* 785 F.2d 1396 (9th Cir. 1986). Where the theory not investigated by the EEOC is reasonably related to the allegation in the EEOC charge, it would be a needless procedural barrier to force the plaintiff to begin again at the EEOC investigation stage. *See Oubichon v. North American Rockwell Corp.,* 482 F.2d 569 (9th Cir.1973).

Defendant argues that plaintiff's national origin discrimination claim involves a different legal theory from her claim of race discrimination and therefore cannot be reasonably related to the allegations in the EEOC charge. *Shah v. Mt. Zion Hospital and Medical Center,* 642 F.2d 268 (9th Cir.1981). Defendant also argues that the incident giving rise to plaintiff's claim for national origin discrimination is separate from and unrelated to the incidents that gave rise to plaintiff's original charges of discrimination. To arrive at this position, defendant narrowly construes plaintiff's complaint as stating a claim only for her nonselection for the specific vacant trial attorney position filled by Mr. Baker. Defendant concludes that since Ms. Rodriguez was selected for the trial attorney position through the detail procedure rather than through the open selection process, any

claim of discrimination based on Ms. Rodriguez' selection is distinct and must be pursued initially through a new EEOC investigation.

Defendant's arguments are without merit. The court in *Shah* does deny plaintiff's attempt to add claims for discrimination based on national origin, color and religion to his claims for race discrimination on the grounds that these claims were not reasonably related to the EEOC race discrimination charge and were not investigated by the EEOC. However, subsequent cases in this and other circuits have permitted the addition of claims based on legal theories not brought in the initial EEOC charge where the new legal theories are reasonably related to the initial legal theories. *Gibbs,* 785 F.2d at 1400; *Avagliano v. Sumitomo Shoji America, Inc.,* 614 F.Supp. 1397 (S.D.N.Y.).

The legal theories underlying claims of discrimination based on race and national origin are closely related. Several district courts have permitted claims based on race where the initial EEOC charge stated a claim based only on national origin, concluding that a claim based on race was merely a refinement of the claim based on national origin. *See, e.g., Kahn v. Pepsi Cola Bottling Group,* 526 F.Supp. 1268, 1270 (E.D.N.Y.1981); *Avagliano,* 614 F.Supp. at 1403; *Mays v. Motorola, Inc.,* 22 Fair Empl.Prac.Cas. 796, 1978 WL 13839 (N.D.Ill.1978). Defendant has put forth no argument for treating these legal theories differently in this case.

In addition, defendants too narrowly construe the facts giving rise to Ms. Lazuran's allegations of discrimination. Plaintiff's claim is based on her failure to obtain a trial attorney position in the Seattle District Office. The evidence for her initial claim was the Seattle District Office's hiring of Ross Baker for the vacant trial attorney position. Although Ms. Rodriguez did not come into her trial attorney position through the open selection process,[3] she and Mr. Baker were selected as trial attorneys within a month of each other. Furthermore, although it may be routine to "detail" EEOC employees into different divisions, all of the relevant EEOC regulations supplied to the court state that a detail is to be for a short period of time and that the detailed employee is to return at some point to her original position. Ms. Rodriguez, however, is still employed as a trial attorney by the Seattle District Office, which provides at least some circumstantial evidence, regardless of its merit, in support of Ms. Lazuran's claim that the EEOC impermissibly favored minorities over more-qualified caucasians when selecting trial attorneys.

Furthermore, the court finds that the scope of a reasonable EEOC investigation into Ms. Lazuran's initial charge of discrimination not only should have but did include an investigation into the national origin of trial attorneys in the Seattle District Office. In the information gathered during the investigation, trial attorneys in the Seattle District Office were identified by sex and by race or national origin. *See* Declaration of Catherine Lazuran, Exhibit 3. In addition, the EEOC's own compliance manual instructs investigating officers to investigate related issues not alleged in the charge if, during the investigation, "evidence is uncovered which points to possible violations other than those already alleged." EEOC Compliance Manual, ¶ 803,

---

**3.** Defendant offers the Declaration of Michael Reiss, regional attorney in the Seattle District Office in 1985 when Mr. Baker and Ms. Rodriguez were hired, apparently for the proposition that because Ms. Rodriguez was selected through the detail procedure rather than through the selection procedure, Ms. Lazuran was simply ineligible for the proposition occupied by Ms. Rodriguez. Mr. Reiss states that at the time the litigation department needed another attorney and there was a hiring freeze in effect so a selection had to be made from within the Seattle District Office. Declaration of Michael Reiss, paras. 3–4. However, based on this court's understanding of the detail procedure as outlined in the EEOC Employee Handbook, there is nothing that would have prevented the Seattle District Office from selecting Ms. Lazuran, then an EEOC trial attorney in the Los Angeles office, for the detail. *See* EEOC Employee Handbook at 4–2. *See also,* Collective Bargaining Agreement between National Council of EEOC Locals No. 216, American Federation of Government Employees, AFL–CIO and U.S. Equal Employment Opportunity Commission (1982–1986) at 21–22.

§ 22.3(a). Finally, many of the compliance forms that the EEOC requires employers to fill out treat race and ethnic identification in the same category. *See* EEOC Instruction Booklets for EEO–1 and EEO–6 employer reports, ¶ 1881, no. 4 and ¶ 1895, no. 4.

As discrimination claims based on race and national origin are closely related, and as the EEOC investigation of Ms. Lazuran's initial charge certainly served to put the EEOC on notice of these closely related claims of discrimination, plaintiff's new claim does not require her to begin again at the EEOC investigation level before pursuing this theory in court. *See Albano v. Schering–Plough Corp.*, 912 F.2d 384 (9th Cir.1990). Thus, Ms. Lazuran's proposed amended complaint would not be futile.

### B. *Prejudice and Unreasonable Delay*

■ Defendant claims that it would be prejudiced if Ms. Lazuran is permitted to amend her complaint at this stage because the discovery period is closed. *See Roberts v. Arizona Board of Regents*, 661 F.2d 796, 798 (9th Cir.1981). Defendant also contends that even if discovery were extended, it would be prejudiced by having to conduct discovery so close to trial, which is scheduled to begin August 5, 1991.

Defendant's argument is again without merit. The discoverable information regarding Ms. Rodriguez' detail into the trial attorney position is within defendant's possession.[4] In addition, this court permitted Ms. Lazuran to conduct additional discovery relevant to Ms. Rodriguez' selection as a trial attorney in the Seattle District Office as long as she had filed all discovery requests arising out of Ms. Rodriguez' May 10 deposition by May 17. Furthermore, any information defendant needs from plaintiff regarding the basis for her national origin discrimination claim can be obtained through a deposition limited solely to that issue. Thus, defendant will be prejudiced neither by the need for additional discovery nor by a delay in trial.

Finally, defendant argues that Ms. Lazuran has unreasonably delayed in amending her complaint because she should have known from January depositions of Seattle District Office employees that Ms. Rodriguez' was detailed into a trial attorney position in 1985. At his January 9, 1991, deposition, Stephen Randels stated that he had supervised Ms. Rodriguez as a trial attorney in 1985. Mr. Randels identified Ms. Rodriguez as an Hispanic female. Defendant's Opposition to Plaintiff's Motion for Leave to Amend Complaint, Exhibit 4. At his January 10, 1991, deposition, Luis Lucero stated that he also supervised Ms. Rodriguez in 1985. *Id.*, Exhibit 5.

Neither deponent, however, states that Ms. Rodriguez was detailed into the trial attorney position in 1985 at about the same time that Ross Baker was hired for the vacant trial attorney position. Furthermore, it was not until defendant supplemented and then clarified its answers to interrogatories that plaintiff learned Ms. Rodriguez' hiring date and method of selection.

Ms. Lazuran's interrogatory # 10 asked for a variety of information about each trial attorney position that had been filled from 1979 to the present. Subpart (c) of that interrogatory requested the date that each position was filled. Defendant's first supplemental response stated that Ms. Rodriguez began in her position on January 14, 1985. Declaration of Catherine Lazuran, Exhibit 6. However, that answer also stated that Ms. Rodriguez had been selected by Luis Lucero. Ms. Lazuran states that from a prior deposition she knew that Mr. Lucero was not working in the Seattle District Office in January 1985, and, thus, could not have selected Ms. Rodriguez. *Id.*, ¶ 9. She then asked defendant to clarify or confirm Ms. Rodriguez' starting date. Defendant stated in its second supplemental response on March 25, 1991 that Ms. Rodriguez began in a permanent trial attorney position in February 1986 after having

---

**4.** Although Michael Reiss, the regional attorney of the Seattle District Office when both Mr. Baker and Ms. Rodriguez were selected as trial attorneys, is no longer in that position, he continues to assist the EEOC in its defense of this case. *See* Declaration of Michael Reiss in Support of Defendant's Opposition to Plaintiff's Motion for Leave to Amend Complaint.

completed a one-year detail that began in January 1985. *Id.*, ¶ 10 and Exhibit 7.

While Ms. Lazuran may have had sufficient information to begin exploring whether she should amend her complaint to include a charge of national origin discrimination in January, she cannot be penalized for defendant's repeated refusal to provide straightforward information about Ms. Rodriguez' selection as a trial attorney. Furthermore, any delay between the January depositions and Ms. Lazuran's filing of her motion for leave to amend her complaint does not rise to the level of bad faith.

It is hereby ORDERED, ADJUDGED and DECREED that:

(1) plaintiff's motion for leave to amend her complaint is GRANTED; and

(2) defendant is granted leave to conduct a deposition of plaintiff limited solely to the issue of plaintiff's basis for her national origin discrimination claim.